USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 9/29/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NB and CB, individually and on behalf of HB,

Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

15 Civ. 4948 (AT)

**MEMORANDUM AND ORDER**

ANALISA TORRES, District Judge:

NB and CB (together, the "Parents"), individually and on behalf of their child, HB, (collectively, "Plaintiffs") bring this action against Defendant, the New York City Department of Education ("DOE"), pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.* (2012).[1] Plaintiffs seek review of the February 26, 2015 decision of New York State Review Officer Nicholas A. Steinbock-Pratt (the "SRO Op.") affirming in part and modifying in part the June 21, 2013 decision of Impartial Hearing Officer Edgar De Leon (the "IHO Op."), which denied Plaintiffs' IDEA claims. For the reasons stated below, Plaintiffs' motion is DENIED, and the DOE's cross-motion is GRANTED.

## STATUTORY FRAMEWORK

Under the IDEA, New York State must "provide disabled children with a free and appropriate public education ('FAPE')." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 174-75 (2d Cir. 2012). "To ensure that qualifying children receive a FAPE, a school district must create an individualized education plan ('IEP') for each such child." *Id.* at 175 (citing 20 U.S.C.

[1] "This opinion, dealing as it does with the IDEA and practices thereunder, is replete with acronyms. In addition to their definition in the text, a separate glossary of acronyms is therefore set forth in the Appendix to this opinion." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 223 n.1 (2d Cir. 2012).

§ 1414(d)). The IEP is a written statement that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 102-03 (2d Cir. 2016) (quoting *R.E.*, 694 F.3d at 175). "The IDEA requires that an IEP be 'reasonably calculated to enable the child to receive educational benefits.'" *R.E.*, 694 F.3d at 175 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)).

In New York City, the DOE creates an IEP through a local Committee on Special Education (the "CSE"). *See* N.Y. Educ. Law § 4402(1)(b)(1) (McKinney, Westlaw through 2016 ch. 328). At a minimum, the CSE is composed of the student's parent, one of the student's special education teachers, a school psychologist, a school district representative, an individual who can interpret the instructional implications of evaluation results, a school physician, and a parent of another student with a disability. *Id.* § 4402(1)(b)(1)(a). "The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E.*, 694 F.3d 175.

If a parent believes that the DOE has breached its obligations under the IDEA by failing to provide the student with a FAPE, the parent "'may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district' by filing what is known as a 'due process complaint.'" *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (per curiam) (quoting *Hardison v. Bd. of Educ.*, 773 F.3d 372, 376 (2d Cir. 2014)). The due process complaint initiates administrative proceedings involving a hearing before an impartial hearing officer ("IHO"). *R.E.*, 694 F.3d at 175 (citing N.Y. Educ. Law § 4404(1)). "Either party may

then appeal the case to the state review officer ('SRO'), who may affirm or modify the IHO's order." *Id.* (citing N.Y. Educ. Law § 4404(2)).

The administrative proceedings are governed by a three-pronged framework known as the *Burlington/Carter* test. *See Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993); *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). As implemented by New York law, this test allocates to "the local school board . . . the initial burden of establishing the validity of its plan at a due process hearing. If the board fails to carry its burden, the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them." *R.E.*, 694 F.3d at 184-85 (footnote omitted) (citing N.Y. Educ. Law § 4404(1)(c)). Any party aggrieved by the SRO's final administrative decision has the right to seek further review by bringing a civil action in state or federal court. *Id.* at 175 (citing 20 U.S.C. § 1415(i)(2)(A)).

## BACKGROUND

A. <u>HB's 2012-2013 IEP and Placement</u>

The factual background of this case is largely undisputed. HB is a twelve-year-old student diagnosed with autism. *See* Pl. Mem. 2, ECF No. 21; Def. Mem. 1, ECF No. 23; Ex. 2 at 1.[2] HB has allergies to, among other things, eggs, dairy, peanuts, and fish. Ex. 4 at 1; Ex. 6 at 2. HB is non-verbal and faces developmental challenges in speech, communication, and social skills, as well as sensory processing. *See* Tr. 186-87; Ex. I at 2; Ex. 5 at 1-7. At the start of the 2012-2013 school year, when HB was eight years old, she was reportedly working at a prekindergarten level. Ex. 2 at 16. HB had previously attended both public and private schools,

[2] Citations to exhibits ("Ex.") and the transcript ("Tr.") refer to the record of proceedings before the IHO. The Parents' exhibits are designated by letters, and the DOE's by numbers. The record materials have been filed with the Court under seal. *See* ECF No. 12.

but for the previous year she had been attending the Rebecca School, a specialized private school. Pl. Mem. 4. The Rebecca School utilizes a methodology known as the Developmental, Individual Difference, Relationship/Floortime ("DIR") model. *Id.*; Ex. N at 1.

On May 3, 2012, the DOE held a meeting of the CSE in order to formulate an IEP for HB's 2012-2013 school year. Def. Mem. 1; Ex. 6 at 1. The CSE members in attendance were HB's father, NB; Craig Czarnecki, Ph.D., serving as a DOE school psychologist as well as the DOE district representative; Lindsay Dalkin, a DOE special education teacher; Michelina Leone-Flick, a DOE social worker; Zaida Cordero, a parent of another student with a disability; Jaclyn Neubauer, HB's teacher at the Rebecca School; and Lynne Kalvin, a Rebecca School social worker. Def. Mem. 1 (citing Ex. 2 at 19). The CSE team relied in large part on a December 2011 progress report submitted by the Rebecca School. *See* Def. Mem. 2; Ex. 5.

Based on their review of the materials and the input of the CSE members, the CSE created the 2012-2013 IEP, which recommended that HB be placed in a twelve-month specialized school and, further, in a special education class with six students, one special education teacher, and one paraprofessional, commonly referred to as a "6:1:1" or "6:1+1" ratio.[3] Def. Mem. 2; Ex. 2 at 11. The IEP also recommended a variety of related services, including speech-and-language therapy, occupational therapy, and counseling. Def. Mem. 2 (citing Ex. 2 at 12). Finally, the IEP contained a set of goals and short-term objectives for HB's upcoming school year. *Id.* at 2-3 (citing Ex. 2 at 4-11).

---

[3] The 2012-2013 IEP was amended in June 2012 to incorporate an agreement between the Parents and the DOE that HB would be placed in a particular summer camp. *See* Def. Mem. 3. This amendment is no longer at issue, so the Court refers exclusively to the amended version of the IEP. *See* Ex. 2 at 11.

In a final notice of recommendation ("FNR") dated June 13, 2012, the DOE informed the Parents that HB would be placed in a 6:1:1 classroom at a specialized public school identified as P369K @ P067K ("P369K"). Ex. 7 at 1. The next day, the Parents wrote to the DOE to give notice that they had yet to receive an FNR, that they would be reenrolling HB in the Rebecca School, and that they would seek tuition reimbursement from the DOE. Ex. D at 1. The Parents faxed a virtually identical letter to the DOE one day later. Ex. W at 1.

After receiving the FNR and over the course of the next several weeks, NB visited P369K three times. Tr. 313. Upon determining that P369K was not a suitable placement for HB, NB re-sent the same letter several times. *See* Tr. 323-24. On October 22, 2012, the Parents filed a due process complaint, triggering New York's administrative review of the IEP. *See* Def. Mem. 3-4; Ex. B at 1, 4.

B. <u>IHO Hearing and Opinion</u>

The assigned IHO, Edgar De Leon, held a hearing on three nonconsecutive dates ranging from December 21, 2012, to April 10, 2013. IHO Op. 2. The IHO issued his decision on June 21, 2013. *Id.* at 19. The Parents raised a number of procedural and substantive challenges to the IEP. In analyzing the first prong of the *Burlington/Carter* test, the IHO found some procedural violations in the formulation of the IEP but concluded that they were insufficient to invalidate the IEP. *See id.* at 10-12. Instead, the IHO based his decision on the DOE's purported failure to offer the amended version of the 2012-2013 IEP into evidence. *Id.* at 12. Because the burden is on the DOE to show that it offered a FAPE, and because in the IHO's view the DOE had failed to provide a necessary piece of evidence, the IHO found that the DOE denied HB a FAPE. *Id.*

As to the second prong of the *Burlington/Carter* test, the IHO concluded that the Rebecca School was an appropriate placement for HB. *See id.* at 13-14. Nevertheless, on the third and

final prong, the IHO found that "equitable considerations bar an award of tuition reimbursement to the Parent[s]." *Id.* at 19. In particular, the IHO determined that the Parents had entered into an illusory contract with the Rebecca School, *id.* at 15, and, therefore, that they lacked standing to seek tuition reimbursement, *id.* at 18. Accordingly, the IHO ruled in favor of the DOE and denied the Parents' claim.

C. <u>SRO Opinion</u>

Both parties appealed to New York State Review Officer Nicholas A. Steinbock-Pratt, who issued his decision on February 26, 2015. SRO Op. 17. The SRO reversed both of the IHO's key findings, concluding instead that the IEP was properly in evidence and that the Parents did have standing to seek tuition reimbursement. *Id.* at 8-9. The SRO then addressed the merits of the Parents' challenges to the IEP under the first prong of the *Burlington/Carter* test and found that "any deficiencies in the conduct of the May 2012 CSE meeting and the June 2012 IEP do not rise to the level of a denial of a FAPE, individually or taken as a whole." *Id.* at 17. Because the SRO found that the DOE had not denied HB a FAPE, he declined to address the other prongs of the *Burlington/Carter* test, and he found in favor of the DOE. *Id.*

**DISCUSSION**

A. <u>Standard of Review</u>

Although the parties have sought relief from the Court by motions for summary judgment, the "procedure is in substance an appeal from an administrative determination, not a summary judgment." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012) (quoting *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84 n.3 (2d Cir. 2005)). "[T]he motion serves as a pragmatic procedural mechanism for reviewing a state's compliance with the procedures set forth in [the] IDEA [in developing the specific IEP at issue] and

determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." *Id.* at 225-26 (second and third alterations in original) (quoting *Lillbask*, 397 F.3d at 83 n.3). Accordingly, "a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact." *Lillbask*, 397 F.3d at 83 n.3. Rather, the Court "must base its decision on the preponderance of the evidence." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012).

Nevertheless, "federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *M.H.*, 685 F.3d at 240 (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007)). "[C]ourts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *T.Y. ex rel. T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). Nor may the courts make subjective credibility assessments or weigh the testimony of educational experts when the state authorities have already performed these functions. *M.H.*, 685 F.3d at 240. In this way, "the role of federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *Id.* (quoting *Gagliardo*, 489 F.3d at 112).

However, "the deference owed to an SRO's decision depends on the quality of that opinion." *R.E.*, 694 F.3d at 189. Courts may consider "whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.* (quoting *M.H.*, 685 F.3d at 244). Considering the respective institutional competencies of courts and administrative officers, the SRO's "determinations regarding the substantive adequacy of an IEP should be afforded more weight

than the determinations concerning whether the IEP was developed according to the proper procedures." *M.H.*, 685 F.3d at 244. Additionally, courts should "afford more deference when [their] review is based entirely on the same evidence as that before the SRO," as is the case here. *Id.* When seeking to overturn the decision of an SRO, the Parents bear the burden of demonstrating that the decision was insufficiently reasoned or supported. *Id.* at 225 n.3.

B. Adequacy of the IEP

The first prong of the *Burlington/Carter* test examines the procedural and substantive adequacy of the IEP. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). The review sought by the Parents in this Court concerns the substantive merits of the IEP's recommendations, as well as P369K's ability to implement those recommendations. The Court addresses each of these challenges in turn.

1. Allergies

The Parents assert that the IEP failed to provide sufficient details to address HB's allergies. Relatedly, they challenge the ability of HB's assigned school, P369K, to accommodate her allergies. To begin with, the DOE argues that the Parents' failure to include any allergy-related contentions in their due process complaint resulted in the waiver of these arguments. However, the Parents presented their allergy claims to the SRO, *see* Verified Pet. ¶¶ 5, 22, 30, 38; Pl. Mem. Law to SRO 4-5, and the SRO reached the merits of their claims with respect to the IEP, SRO Op. 13. The DOE is correct that because the IHO did not address the allergy claims, the DOE was not required to cross-appeal on those claims to the SRO. *See, e.g.*, *FB v. N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 589 (S.D.N.Y. 2013). But in its answer to the Parents' appeal, the DOE chose not to raise a waiver argument, instead engaging with the merits of the allergy issue. *See* Verified Answer & Cross-Appeal ¶ 36. "This is classic 'waiver of waiver.'"

*United States v. Macias*, 789 F.3d 1011, 1024 (9th Cir. 2015) (Wardlaw, J., concurring in part and dissenting in part), *cert. denied*, 136 S. Ct. 1168 (2016). "[I]t is well settled that 'a party's failure to raise an argument during administrative proceedings generally results in a waiver of that argument," *M.N. v. Katonah-Lewisboro Sch. Dist.*, No. 14 Civ. 3845, 2016 WL 4939559, at *9 n.12 (S.D.N.Y. Sept. 14, 2016) (emphasis omitted) (quoting *B.P. v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 1822, 2014 WL 6808130, at *7 (S.D.N.Y. Dec. 3, 2014), *aff'd*, 634 F. App'x 845 (2d Cir. 2015) (summary order)), even where the argument being waived is itself about waiver. Accordingly, the Court finds that the DOE waived its waiver argument by not raising it in its answer to the SRO, and the Court may consider the merits of the Parents' allergy claims.

The IEP noted that HB "is not currently on any medications[] and has food allergies to eggs, dairy, fish, peanuts, and flowers." Ex. 2 at 2. The SRO reviewed the record and concluded that this was sufficient. SRO Op. 13. The Parents now have the burden of showing that the SRO's conclusion was not well reasoned or supported, and they have failed to do so. The SRO found, and the Court agrees, that the failure of the IEP to reference a single incident of hospitalization at least three years prior, *see* Ex. L at 1, did not deny HB a FAPE, *see* SRO Op. 13. Likewise, the SRO found that "based on the information in existence at the time of the May 2012 CSE meeting, the district did not deny the student a FAPE by not providing additional details regarding her allergies on the IEP." *Id.* (citing *L.K. ex rel. A.K. v. Dep't of Educ.*, No. 09 Civ. 2266, 2011 WL 127063, at *9 (S.D.N.Y. Jan. 13, 2011)). Nothing in the record indicates what, if any, additional details or recommendations were necessary to provide HB with a FAPE, even though the parties had the opportunity to supplement the record here on appeal. *See* 20 U.S.C. § 1415(i)(2)(C)(ii). To the extent they rely on the DOE's failure to evaluate HB for allergies, the Parents do not point to any evidence indicating that such an evaluation was

necessary, that the DOE should have known it was necessary, or that an evaluation would have revealed the need to add anything to what was already in the IEP. *See id.* § 1414(c)(1). This distinguishes the present case from the one cited by the Parents, where the need for additional medical accommodations was well documented. *See GB v. N.Y.C. Dep't of Educ.*, 145 F. Supp. 3d 230, 252-54 (S.D.N.Y. 2015). Accordingly, the Court defers to the SRO's reasoned conclusion that the IEP sufficiently addressed HB's allergies.

The Parents' challenge to P369K's ability to accommodate HB's allergies fails for similar reasons. The testimony of the Parents' own witness indicates that, contrary to their assertions, *see, e.g.*, Pl. Mem. 25, P369K was willing to make reasonable accommodations for HB's allergies by seating her at a separate cafeteria table, *see* Tr. 125. To the extent that the Parents argue P369K should have acceded to their additional requests, such as allowing HB to eat in the classroom and heating up HB's food in a microwave provided by the Parents, these arguments collapse back into their challenge to the IEP itself. *See M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 245 (2d Cir. 2015) (per curiam) (rejecting "substantive attacks on [an] IEP that were couched as challenges to the adequacy of [the school]"). The IEP did not require HB's school to take these additional steps, and as discussed above, the IEP's approach to HB's allergies was sufficient to afford HB a FAPE. Because there is no evidence that P369K lacked the ability to implement the terms of HB's IEP, the Parents' claim that the school was inappropriate must be denied. *Id.* at 245-46.

2. <u>Sensory Processing</u>

As for HB's sensory needs, the SRO thoroughly catalogued the evidence in the record and concluded that the IEP "adequately detailed [HB]'s need for sensory input." SRO Op. 13. On appeal, the Parents' challenge focuses on (1) the IEP's omission of some specific sensory

management techniques and (2) the CSE's decision to include other techniques in the section describing services HB was then receiving, rather than as a prescription for techniques to be used in her new placement. These questions present "precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *GB*, 145 F. Supp. 3d at 250 (quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003)). The Court is not persuaded that the SRO's decision was flawed, nor that the omission of some specific techniques denied HB a FAPE. *Id.* (deferring to the SRO's determination of "[w]hether there is enough detail in the goals and strategies"). Finally, the CSE did not deny HB a FAPE when it included other techniques, like the administration of "brushing and lotion every two hours," Ex. 2 at 2, in the descriptive section rather than the prescriptive section of the IEP. The IEP required that HB be given "sensory input" and "frequent breaks," *id.* at 3, and one of its prescribed goals was to "increase [HB's] ability to remain regulated and to self-soothe," *id.* at 10. That the CSE then provided a descriptive set of proven techniques, leaving to HB's teachers the discretion to tailor their techniques as HB's abilities progressed—in other words, "to rise to the child's needs," Tr. 88—did not deny HB a FAPE, *see, e.g.*, *L.B. v. Katonah-Lewisboro Union Free Sch. Dist*, No. 14 Civ. 6805, 2016 WL 4926203, at *10 (S.D.N.Y. Sept. 14, 2016).

The Parents' challenge to P369K's ability to accommodate HB's sensory needs is, as with their allergy claim, an attack on the IEP couched as a challenge to the adequacy of the assigned school. *M.O.*, 793 F.3d at 245. Each of the Parents' objections to P369K is outside the scope of what the IEP required—for example, that the school was crowded and noisy or that it lacked HB's preferred sensory equipment. *See* Pl. Mem. 25-26. Because the IEP's provisions for HB's sensory needs were adequate, and because there is no evidence that P369K lacked the

ability to implement those provisions, the Parents' claim that the school was inappropriate must be denied. *M.O.*, 793 F.3d at 245-46.

3. DIR Methodology

The DOE contends that the Parents' arguments regarding DIR methodology were waived because the Parents' due process complaint "omits a claim that H.B. required the DIR methodology in order to gain educational benefit." Def. Mem. 16. To the contrary, the Parents' complaint discussed the DIR model used by the Rebecca School, described it as "the specialized instruction necessary for [HB] to progress," Ex. B at 2, and argued that the district program recommended by the IEP would "prove[] insufficient," *id.* at 3. This was enough to put the DOE on notice as to the Parents' arguments, which the Court finds were not waived. *See J.W. v. N.Y.C. Dep't of Educ.*, 95 F. Supp. 3d 592, 603 (S.D.N.Y. 2015) ("[T]he due process complaint's statement that Jake had 'not made progress in a similar program' gave the [DOE] adequate notice that . . . the methodology of that program[ ]was at issue.").

The Parents challenge both the IEP's failure make an explicit recommendation of DIR methodology as well as P369K's ability to implement the IEP's goals. The SRO did not address the first of these issues directly, but the Court finds that the Parents' contention—that "HB needed DIR/Floortime to [l]earn," Pl. Mem. 17—is unsupported by the evidence in the record. Although the Parents document HB's successes under DIR, as well as past regression in a district program, *see* Pl. Mem. 3-4, 17, it does not follow that DIR was the only methodology that could ensure HB progressed academically. Indeed, the evidence indicated that HB had previously progressed with the use of at least one other methodology. *See* SRO Op. 15 (citing Ex. M at 4). "[O]n this record it cannot be said that [HB] could only progress" with a DIR methodology, and,

therefore, the failure to recommend DIR explicitly in the IEP did not deny HB a FAPE. *A.S. ex rel. S. v. N.Y.C. Dep't of Educ.*, 573 F. App'x 63, 66 (2d Cir. 2014) (summary order).

Although the CSE did not explicitly recommend DIR, all 16 goals and 42 short-term objectives were copied virtually verbatim from the Rebecca School's goals for HB, *compare* Ex. 2 at 4-11, *with* Ex. H at 5-15, which were developed for a DIR environment using DIR terminology, *see* Tr. 197-99. Even so, the SRO concluded that "[t]he IEP and annual goals do not require the use of any particular methodology." SRO Op. 14. Courts in this district have disagreed as to whether an IEP's incorporation of DIR-specific goals acts as an implicit adoption of DIR methodology; the current and better view is that it does.[4] *Compare GB*, 145 F. Supp. 3d at 256 (ruling that DIR-specific objectives could not be implemented by a school that did not utilize DIR), *and FB v. N.Y.C. Dep't of Educ.*, 132 F. Supp. 3d 522, 550-51 (S.D.N.Y. 2015) (finding that an IEP "adopt[ed] that methodology" and rejecting a contrary SRO opinion), *with A.D. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 2673, 2013 WL 1155570, at *12 (S.D.N.Y. Mar. 19, 2013) (rejecting the parents' argument that the IEP incorporated DIR methodology). What

[4] Because the Court finds that the CSE implicitly adopted DIR methodology by relying exclusively on the Rebecca School's DIR-specific goals, it need not resolve the Parents' argument—never before the IHO or SRO and raised only in their second brief to this Court—that the CSE denied HB a FAPE by refusing even to consider an explicit recommendation of DIR. *See* Pl. Opp. 16-18, ECF No. 27. Nevertheless, the Court observes from the record in this case that the DOE maintains a policy never to recommend a specific methodology in a student's IEP. *See* Tr. 74, 88, 91-92. Such a blanket policy not to consider an educational placement in appropriate cases is contrary to the procedural requirements of the IDEA. *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 257 (2d Cir. 2012) (per curiam)) (comparing a permissible "decision to rely heavily on a single method" with an impermissible policy "that the district would not consider a [given] placement in an appropriate case"); *S.Y. v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 6277, slip op. at 20-22 (S.D.N.Y. Sept. 28, 2016); *E.H. v. N.Y.C. Dep't of Educ.*, 164 F. Supp. 3d 539, 551-53 (S.D.N.Y. 2016). To the extent that the DOE tries to walk back its policy in its reply brief to this Court, describing it as merely a default or "general practice," *see* Def. Reply 13, ECF No. 28, that position is not borne out by the record in this case, *see, e.g.*, Tr. 88 ("It's considered by the [DOE] to be professionally inappropriate to [specify a methodology in an IEP].").

distinguishes this case from *GB* and *FB*, however, is that the Parents fail to offer any non-speculative evidence that P369K could not have implemented the IEP's DIR-specific goals and objectives. *See, e.g.*, *T.C. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 3477, 2016 WL 1261137, at *14 n.22 (S.D.N.Y. Mar. 30, 2016). Although the Parents assert that "DIR/Floortime was not utilized at P.S. 369," Pl. Mem. 29, the evidence they cite only speculatively supports that conclusion, *see* Tr. 199 (testimony by the Rebecca School's program director that, based on what she had been told, DOE schools do not in general use DIR). Rather, with regard to P369K in particular, the testimony indicates that when NB and a Rebecca School social worker visited, they were told "that there was no specific method being used; that the instruction in the school was individualized. They sometimes use a PECS System for non-verbal children. That they're taught according to their level and it's individualized. It's not—there's no one specific method that they use." Tr. 125. Testimony that a school did not exclusively use one methodology but instead would individualize its methods for a given student supports rather than undermines P369K's ability to implement HB's IEP. This is not a case, such as in *FB*, where the assigned teacher specifically disclaimed any ability to implement DIR-specific goals. 132 F. Supp. 3d at 551. Here, the parents do not offer any non-speculative claims regarding P369K's adequacy; therefore, the DOE was not required to offer rebuttal evidence, and the Parents' challenge fails. *See M.O.*, 793 F.3d at 245.

4. Classroom Ratio

The Parents' final challenge focuses on the classroom ratio recommended by the IEP: they contend that there is no evidence in the record to support assigning HB to a 6:1:1 classroom. The SRO disagreed, basing his findings on a thorough review of the documents and testimony in the record. *See* SRO Op. 15-16. The SRO acknowledged that the evidence was mixed on this

point. On the one hand, a three-year-old evaluation had recommended a smaller ratio, and HB's parents and Rebecca School professionals believed that an 8:1:3 ratio would be preferable. *See id.* On the other hand, HB "had made progress with respect to her ability to remain engaged in group activities," *id.* at 15, and the more recent evaluation recommended a placement much like the one envisioned by the district's 6:1:1 design, *id.* at 15-16. Notably, none of the evidence indicated that an 8:1:3 ratio was necessary for HB to progress academically, merely that it was preferable or optimal. *See id.*[5]

Ultimately, the IDEA does not "guarantee any particular level of education," *Walczak*, 142 F.3d at 130 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 192 (1982)), and an educational placement need not "maximize the [student's] potential," *Rowley*, 458 U.S. at 200. Here, in the SRO's view, a 6:1:1 ratio was "reasonably calculated to address the student's needs," SRO Op. 16, and on this matter, deference to the judgment of the state education officials is especially warranted, *see, e.g.*, *D.A.B. v. N.Y.C. Dep't of Educ.*, 630 F. App'x 73, 78 (2d Cir. 2015) (summary order). The Parents have not shown that the SRO's opinion was not well reasoned or supported, and the Court, therefore, defers to his conclusion. *See, e.g.*, *id.*; *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 869 F. Supp. 2d 320, 335-36 (E.D.N.Y. 2012), *aff'd* 725 F.3d 131 (2d Cir. 2013).

## CONCLUSION

Having considered each of the Parents' challenges in turn, the Court affirms the SRO's determination that the 2012-2013 IEP was adequate and that the DOE offered HB a FAPE. The DOE having prevailed on the first prong of the *Burlington/Carter* test, Plaintiffs' claim for

[5] Although Rebecca School witnesses suggested that the IEP's goals could not be implemented in a 6:1:1 classroom, *see* Tr. 123-24, 197-98, the Court defers to the SRO's conclusion that "nothing in the language of the goals requires" a smaller ratio, SRO Op. 15.

tuition reimbursement cannot succeed. Plaintiffs' motion for summary judgment is DENIED, and the DOE's cross-motion is GRANTED. The Clerk of Court is directed to terminate the motions at ECF Nos. 20 and 22 and to close the case.

SO ORDERED.

Dated: September 29, 2016
New York, New York

ANALISA TORRES
United States District Judge

**APPENDIX: GLOSSARY OF ACRONYMS**

CSE – Committee on Special Education
DOE – New York City Department of Education
DIR – Development, Individual-Difference, Relationship/Floortime
FAPE – Free Appropriate Public Education
FNR – Final Notice of Recommendation
IDEA – Individuals with Disabilities Education Act
IEP – Individualized Education Program
IHO – Impartial Hearing Officer
SRO – State Review Officer